NOT YET SCHEDULED FOR ORAL ARGUMENT

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| Brian Wrenn, et al., | ) | No. 16-7025 |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| District of Columbia and | ) | |
| Cathy Lanier, et al., | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

MOTION FOR STAY PENDING APPEAL, FED. R. APP. P. 8

Pursuant to Fed R. App. P. 8, and to this Court's supervisory authority over the District Court in the aid of this Court's appellate jurisdiction, Plaintiffs-Appellants Brian Wrenn, Joshua Akery, Tyler Whidby, and Second Amendment Foundation, Inc. ("SAF") respectfully move this Court for an order staying all further proceedings in the District Court pending the determination of this appeal. The District Court denied Plaintiffs this relief by Memorandum Opinion and Order on the afternoon of Friday, April 15, 2016; Exhibit A. Defendants were telephonically notified of the filing of this motion on April 25, 2016.

It should not take ten years, four appeals, and two petitions for a writ of mandamus to obtain this Court's opinion on a straightforward (if hotly contested) constitutional question: does the Second Amendment secure a meaningful individual right to carry handguns for self defense? Nor does the answer to this question turn on "expert" opinion as to whether carrying guns for self-defense is a good idea.

Not five months ago, in this saga's previous chapter, this Court repeatedly lamented that it had "no choice" but to dispense with a year's worth of litigation effort, concluding as it did that the district judge assigned the case lacked jurisdiction to hear it. "We realize that we are undoing the work of litigation to date, but we have no choice . . . We have no choice but to vacate the order entered . . . ." *Wrenn* v. *District of Columbia*, 808 F.3d 81, 84 (D.C. Cir. 2015). Plaintiffs appreciate the sentiment, but now is the time for action. Absent immediate relief, Plaintiffs will needlessly suffer severe harm, quite possibly culminating in having another appeal thrown in the procedural wastebasket, and delaying Plaintiffs' day in this Court further yet.

Some (not Plaintiffs) might say that this case's merits pose difficult questions. Whether the District Court's proceedings should be stayed, so that this appeal may proceed in an orderly fashion—and this time, *conclude*—ought to be less controversial.

STATEMENT OF FACTS

On August 6, 2009, Plaintiff SAF and three of its members brought suit challenging the District of Columbia's longstanding prohibition on carrying handguns for self-defense. *Palmer* v. *District of Columbia*, D.D.C. No. 09-1482. It had become "common knowledge . . . that with very rare exceptions licenses to carry pistols have not been issued in the District of Columbia for many years and are virtually unobtainable." *Bsharah* v. *United States*, 646 A.2d 993, 996 n.12 (D.C. 1994). In the wake of *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), the District had repealed the Police Chief's authority to issue carry licenses, and subsequently removed reference to the license's availability from its general proscription of handgun carrying.

*Palmer* involved no factual dispute, only a question of law, and thus stood ready for decision on the parties' cross-dispositive motions by October 9, 2009. But the District Court would not decide the case *for*

*years*. On October 21, 2013, their many efforts to elicit a decision having failed, Plaintiffs petitioned this Court for a writ of mandamus compelling the District Court to act. *Palmer* v. *District of Columbia*, D.C. Cir. No. 13-5317. This Court did not think that an over four-year delay in answering a question of law was sufficiently "egregious or unreasonable," and denied the petition without prejudice to its renewal. *Id.*, Order (Dec. 13, 2013). Nearly half a year later, with no relief in sight, *Palmer* plaintiffs renewed their petition. Two months later, the District Court, per the Hon. Frederick J. Scullin, Jr., finally decided the case by striking down the law. *Palmer* v. *District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014).

But the decision would prove to be of no practical consequence. The District obtained a short stay, ostensibly to allow time to amend its laws into compliance with constitutional requirements. Cf. *Palmer*, 59 F. Supp. 3d at 183 (carry ban enjoined "unless and until such time as the District of Columbia adopts a licensing mechanism consistent with constitutional standards enabling people to exercise their Second Amendment right to bear arms") (footnote omitted). Far from "enabling people to exercise their Second Amendment right to bear arms," the

City revived its discretionary licensing system for handgun carriage pursuant to which no one could recall a permit ever having been granted. Indeed, the standards for issuance precluded the "general community" from accessing the right. D.C. Code § 7-2509.11(1)(A).

Meanwhile, Defendants had appealed their loss in *Palmer*. See D.C. Cir. No. 14-7180. While that appeal was pending, and while Judge Scullin still had before him the *Palmer* plaintiffs' various motions to enforce his judgment, SAF brought this action directly challenging the "new" D.C. carrying restrictions. On account of *Palmer*'s pendency, this case was deemed related to *Palmer* and assigned to Judge Scullin. Wishing to avoid another half-decade wait for a summary judgment, Plaintiffs moved for a preliminary injunction on February 6, 2015.

With the "new" laws in place, Defendants dismissed their *Palmer* appeal on April 2, 2015. And on May 18, 2015, Judge Scullin denied the enforcement motions in *Palmer*—but granted Plaintiffs' preliminary injunction motion. *Wrenn* v. *District of Columbia*, 107 F. Supp. 3d 1 (D.D.C. 2015). On June 1, 2015, Defendants answered the complaint, admitting (1) that the individual Plaintiffs are each qualified to obtain a license to carry a handgun but for their lack of "good" or "proper"

reason, and (2) that the individual Plaintiffs' carry license applications were denied on those grounds. See Answer, *Wrenn* v. *District of Columbia*, D.D.C. No. 15-162, Dkt. 20, ¶¶ 26, 30, 31, 33 (June 1, 2015). With Defendants appealing the injunction, Judge Scullin effectively stayed further district court proceedings by adjourning indefinitely the scheduling conference. See Order, *Wrenn* v. *District of Columbia*, No. 15-162, Dkt. 29 (D.D.C. June 24. 2015).

At last, it appeared that the basic constitutional issue would be resolved. The appeal (this Court's No. 15-7057) was fully briefed, including significant amicus participation on both sides, but this Court identified what it would consider to be a jurisdictional defect in Judge Scullin's designation to hear the case in the first place. *Wrenn*, supra, 808 F.3d 81. The Chief Justice could have resolved the problem with a simple administrative order clarifying that Judge Scullin's designation extended to related cases or so designating him nunc pro tunc, see, *e.g.*, *Leary* v. *United States*, 268 F.2d 623, 628 (9th Cir. 1959) (en banc); *Two Guys from Harrison-Allentown, Inc.* v. *McGinley*, 266 F.2d 427, 430 n.1 (3d Cir. 1959), but he refused to do so. See Notices of Correspondence, No. 15-7057, Dkt. Nos. 56 & 57.

On remand, the case was re-assigned to the Hon. Colleen Kollar-Kotelly, who denied Plaintiffs' preliminary injunction motion on March 7, 2016. *Wrenn* v. *District of Columbia*, No. 15-162-CKK, 2016 U.S. Dist. LEXIS 28362 (D.D.C. Mar. 7, 2016). Plaintiffs immediately noticed the instant appeal, the third appeal (following the ill-starred appeals in 14-7180 and 15-7057) that might obtain this Court's opinion on the basic constitutional question at issue.

But Defendants declined to consent to a stay of the District Court's proceedings pending appeal, and the District Court denied Plaintiffs' motion to stay proceedings pending appeal on April 15, 2016. Although the District Court noted that its practice is to refrain from setting a dispositive briefing schedule until the completion of discovery, Exh. A at 9 n.2, the crux of its decision is that "the future effect of any decision by the D.C. Circuit on the interlocutory appeal [is] highly speculative," *id.* at 6. Accordingly, the District Court is proceeding towards resolving this case, notwithstanding the pendency of this appeal, "[a]bsent intervening contrary action by the D.C. Circuit." *Id.*

In constitutional cases, where the adjudicative facts are not at-issue, a preliminary injunction motion can act as a conclusive decision on the merits for all intents and purposes. Thus, especially where the constitutional issues are novel or deeply contested, the standard procedure is to stay district court proceedings pending the interlocutory appeal's outcome. There is, after all, no point in wasting the parties' and the courts' time litigating the same issue in two courts at once, risking an appellate court's undoing of substantial litigation undertaken pursuant to an erroneous view of the law—or a district court mooting an advanced interlocutory appeal, perhaps an argued appeal on the cusp of decision, with a final (erroneous) judgment.

And if, as here, there is no injunction in place against the challenged provision, the defendant government cannot suffer any harm by having the district court proceedings stayed for a short period of time while the appellate court settles the governing constitutional principles.

On the other hand, absent an immediate stay of the district court's proceedings, the Plaintiffs, the public, the Defendants' taxpayers, and the Courts, would suffer great harm. Every court that has decided cases

such as this has viewed them, as do Plaintiffs, as *legal* disputes. The District Court, however, supports Defendants' efforts to turn this into a battle of the experts, and it has already accepted Defendants' view of the controlling legal standards. Should the District Court's final judgment issue before this Court could decide this appeal, the former would moot the latter—and Plaintiffs would start all over again, with a fourth appeal. But were this appeal to be decided first, it might well obviate the need for any of the proceedings below, one way or another.

\* \* \*

Plaintiffs will not dismiss their appeal. And this Court cannot decline jurisdiction, but must handle the appeal on an expedited basis, 28 U.S.C. § 1657(a); D.C. Cir. R. 47.2(a). Accordingly, the risk that this appeal will amount to *another* fantastic waste of time for all involved, including this Court, should it be mooted by an intervening final order below, is balanced equally by the risk that this appeal will render the proceedings below superfluous. Notwithstanding the District Court's surprising departure from the ordinary practice, the proceedings below should be stayed.

"[S]upervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system." *La Buy* v. *Howes Leather Co.*, 352 U.S. 249, 259-60 (1957). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Airline Pilots Ass'n* v. *Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis* v. *North Am. Co.*, 299 U.S. 248, 254 (1936)). This Court cannot effectively control the disposition of this case on its docket without staying the District Court's handling of the matter on *its* docket.

Motions seeking emergency relief must address "(i) the likelihood that the moving party will prevail on the merits; (ii) the prospect of irreparable injury to the moving party if relief is withheld; (iii) the possibility of harm to other parties if relief is granted; and (iv) the public interest." D.C. Cir. R. 8(a)(1).

i. *Likelihood of Success*

If the first prong related to the substantive merits of Plaintiffs' claim, it would be plainly satisfied. Without question, Plaintiffs have

"raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation and thus for more deliberative investigation." *Washington Metro. Area Transit Comm'n* v. *Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). Judge Scullin had seen fit to grant Plaintiffs' motion, and other courts have agreed that similar laws are unconstitutional. See *Peruta* v. *Cnt'y of San Diego*, 742 F.3d 1144 (9th Cir. 2014), *reh'g en banc granted*, 781 F.3d 1106 (9th Cir. 2015); *Schubert* v. *De Bard*, 398 N.E.2d 1339 (Ind. App. 1980); *People* v. *Zerillo*, 219 Mich. 635, 189 N.W. 927 (1922); see also *Drake* v. *Filko*, 724 F.3d 426, 440-58 (3d Cir. 2013) (Hardiman, J., dissenting); *Woollard* v. *Sheridan*, 863 F. Supp. 2d 462 (D. Md. 2012), *rev'd sub nom Wolllard* v. *Brown*, 712 F.3d 865 (4th Cir. 2013).

And deciding the case, in Plaintiffs' favor or against them, would not in either event require experts. The Second Amendment does not "require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise." *McDonald* v. *City of Chicago*, 561 U.S. 742, 790-91 (2010). Scrutinizing the constitutionality of Illinois' former handgun

carry law, the Seventh Circuit concluded that "[t]he constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial." *Moore* v. *Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). When courts strike down laws such as those at issue here, they find that such laws effectively destroy the right, see, *e.g.*, *Peruta*, or at least lack a proper constitutional "fit," *Woollard*, 863 F. Supp. 2d 462. When courts uphold such laws, they do so by (erroneously) deferring to legislative determinations that the laws properly advance a legitimate purpose—not by concluding that the laws are, in fact, desirable. See, *e.g.*, *Woollard*, 712 F.3d 865. Federal courts do not sit in judgment of whether constitutional rights are socially beneficial. Laws that "experts" might "prove" to be wholesome are nonetheless unconstitutional if they deprive people of fundamental rights.

More to the point, if the "likelihood of success" prong relates to the likelihood that Plaintiffs would come to need a stay of proceedings, that prong is plainly satisfied. To be sure, the District Court was correct in offering that the appeal's outcome is uncertain, and thus, so is the interplay between this Court's forthcoming opinion and the District Court proceedings. But this appeal will all but surely resolve the case

one way or another, as likelihood of success on the merits will be the appeal's main event. As Plaintiffs are claiming the violation of a constitutional right, irreparable harm would be presumed. "[T]he loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills* v. *District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quotation omitted); *Ezell* v. *City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). Even the District Court below found for Plaintiffs on this prong. *Wrenn*, 2016 U.S. Dist. LEXIS 28362, at *39-*46. The balance of equities and public interest prongs "merge when the Government is the opposing party," *Nken* v. *Holder*, 556 U.S. 418, 435 (2009), and it is "obvious" that "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon* v. *Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (citations omitted). The likelihood of success prong will determine all.

   As Defendant District of Columbia argued not long ago, the forthcoming appellate opinion is "likely to be extremely persuasive to, if not binding upon, [the District] Court," and thus warrants a stay of proceedings. *Fonville* v. *District of Columbia*, 766 F. Supp. 2d 171, 173 (D.D.C. 2011). At one end of possibility, this Court might hold that

Plaintiffs have zero chance of success because there is no right to carry a gun in the District of Columbia, or because the standard for evaluating infringements of that right is so deferential as to require nothing more than a recitation of the City Council's reasoning. At the spectrum's other end, this Court might hold that Plaintiffs have a 100% chance of success on the merits because the challenged rules work a destruction of the right that can never be sanctioned, regardless of the evidence or any standard of review. And one can imagine a host of other possible outcomes that, while less dramatic, would practically end this litigation, one way or another, or at the very least require the parties to re-imagine their approach to the resolution of this dispute.

Experience teaches that these concerns routinely justify staying district court proceedings in Second Amendment interlocutory appeals. In *Ezell*, upon denying the plaintiffs' motion for a preliminary injunction, the district court found that "[i]f the Seventh Circuit agrees with Plaintiffs, goes to the merits, and strikes down the statute, Plaintiffs will have the relief they seek and there will be no substantive issues remaining for this Court." *Ezell* v. *City of Chicago*, No. 10-C-5135, 2011 U.S. Dist. LEXIS 38547, at *5 (N.D. Ill. Apr. 11, 2011). The

district court was right. The Seventh Circuit enjoined the contested law, whereupon Chicago immediately repealed and replaced it with a regulatory scheme that continues to be the subject of litigation.

A different outcome, proving the same point, was seen in *Jackson* v. *City & Cnty. of San Francisco*, N.D. Cal. 09-2143, where the district court also stayed the case pending the plaintiffs' interlocutory appeal from denial of a preliminary injunction. *Id.*, Dkt. 154 (Dec. 31, 2012). When the plaintiffs lost their case on appeal and could not obtain certiorari, *Jackson* v. *City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014), *cert. denied*,135 S. Ct. 2799 (2015), they quit. See *Jackson*, N.D. Cal. 09-2143, Dkt. 168 (Sept. 3, 2015). The same process appears to be playing out in *Fyock* v. *City of Sunnyvale*, N.D. Cal. No. 13-5807, where the district court stayed proceedings pending interlocutory appeal from its denial of preliminary injunction, *id.*, Order, Dkt. 64 (Mar. 27, 2014), and the plaintiffs have done nothing to move the case since their loss on appeal, *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015).

Of even greater salience is the District of Hawaii's decision to stay further proceedings pending interlocutory review of its preliminary

injunction denial in *Baker* v. *Kealoha*, No. 11-528, Dkt. 63 (D. Haw. June 19, 2012), a case challenging Hawaii's substantially similar regime for licensing handgun carriage, because the appeal "raises serious Constitutional questions." *Id.* at 5-6. Four years later, that appeal still awaits resolution by the en banc Ninth Circuit.

And at some point, a stay would be required for the more immediate reason that the District Court lacks jurisdiction to reach issues pending before this Court on appeal. See*, e.g., Defense Distributed* v. *U.S. Dep't of State*, No. 1:15-CV-00372-RP, Dkt. 66 (W.D. Tex. Oct. 1, 2015) (holding case in abeyance upon appeal of order denying preliminary injunction).

ii. *The prospect of irreparable injury to Plaintiffs if relief is withheld*

The needless wasting of the parties' time (and that of both courts) is the very essence of the harm that this Court has broad discretion to prevent per *Airline Pilots* and *Landis*. Considering the District Court's intention to allow expert discovery of a kind that has never proven dispositive (if it has made any appearance at all) in this type of case, these burdens are significant, and they will needlessly distract the parties as they try to focus their efforts on this appeal. See *Baker*,

supra, at 6 ("a stay will benefit both of the parties to this action by sparing them the expense of contemporaneous litigation and the accompanying fees and expenditure of time").

The prospect that the District Court might actually proceed to final judgment while this appeal is pending threatens even greater harm. Such an event would potentially moot the instant appeal. *DynaLantic Corp.* v. *Dep't of Defense*, No. 96-5169, 1996 U.S. App. LEXIS 30418 (D.C. Cir. Oct. 7, 1996); *American Postal Workers* v. *United States Postal Service*, 764 F.2d 858, 860-61 n.3 (D.C. Cir. 1985). This is not a theoretical concern. One individual claiming (unlike Plaintiffs) a right to carry handguns openly has seen the Ninth Circuit dismiss his interlocutory preliminary injunction appeal upon entry of final judgment, and had to start over with a new appeal. See *Nichols* v. *Brown*, No. 13-56203, Dkt. 28 (9th Cir. June 10, 2014).

Defendants want to conclude briefing summary judgment by February 16, 2017. See *Wrenn*, D.D.C. No. 15-162, Dkt. 61 at 7. This appeal will all but assuredly have been argued by then, but will the mandate have issued before the District Court will decide the case, and thereby moot the briefed and argued appeal? The prospect of

intervening mootness is a sufficient ground upon which to stay district court proceedings pending an interlocutory appeal. *Dominion Video Satellite, Inc.* v. *EchoStar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004); *Plain* v. *Murphy Family Farms*, 296 F.3d 975, 981 (10th Cir. 2002); *Harris* v. *Bd. of Governors of Fed. Reserve Sys.*, 938 F.2d 720, 721 (7th Cir. 1991). Such mootness would severely harm Plaintiffs, whose fundamental rights are being violated, and whose resources are not unlimited.

### iii. *The possibility of harm to other parties if relief is granted*

The only harm to themselves that Defendants identified in opposing a stay was a claim that they have "waited more than a year to undertake discovery in a case that is casting a shadow over a critical public safety law." *Wrenn*, D.D.C. No. 15-162, Dkt. 60, at 1; *id.* at 7.

Whatever does that mean? What is this nebulous "shadow?"

Many laws are controversial. But even assuming that this case concerns a "critical public safety law," nothing now impedes its enforcement. Surely Defendants are not suffering any sort of psychic harm or mental anguish because the legality of their actions is questioned. If Defendants had any qualms about this law, they should

not have enforced it, though they do not appear to doubt the correctness of their position. Indeed, a stay "will serve to clarify the legal issues in the instant action and conserve time and resources for Defendants and Plaintiff alike." *Baker*, at 6.

iv. *The public interest*

The public is harmed when judicial resources are wasted. Absent a stay, that waste *will* occur. The District Court's judgment will either be undone by the intervening appeal, or prove to have been unnecessary, or this Court will expend significant resources only to be mooted by an intervening decision. The public has already experienced one wasted appeal. A repeat performance should not be risked.

Moreover, as *Palmer* plaintiffs noted in renewing their petition for mandamus, the public was already losing confidence in the federal courts' ability to effectively determine this pressing constitutional dispute in 2013. If Plaintiffs are correct (and at least some judges would agree), Americans are being denied a fundamental enumerated right in their Nation's capital—and cannot seem to have the issue conclusively addressed by this Court, for years and years, notwithstanding their diligent efforts.

This appeal concerns a motion for preliminary injunction filed in February, *2015*. Congress has instructed that an appeal from decisions on such motions be decided on an expedited basis. 28 U.S.C. § 1657(a). Absent relief, the public faces the very real prospect that appeals from that motion would be twice argued without effect. But "the public interest is served by granting" a stay "because the grant will conserve judicial resources and ensure proper and expeditious resolution of the important legal issues raised in this action." *Baker*, at 6.

CONCLUSION

The time to resolve this dispute has arrived. The parties should be left to brief and argue this appeal in peace, without distraction, without needlessly wasting more time and money, and without the threat of intervening mootness. Further District Court proceedings should be stayed pending the issuance of this Court's mandate.

Dated:    April 25, 2016          Respectfully submitted,

/s/ Alan Gura
Alan Gura
Gura & Possessky, PLLC
916 Prince Street, Suite 107
Alexandria, VA 22314
703.835.9085/703.997.7665

Counsel for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2016, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties/counsel of record by operation of the court's electronic filing system.


/s/ Alan Gura
Alan Gura

Counsel for Appellants