NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 16-7025

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

BRIAN WRENN, *et al.*,
APPELLANTS,

v.

DISTRICT OF COLUMBIA, *et al.*,
APPELLEES.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**OPPOSITION OF APPELLEES TO APPELLANTS' EMERGENCY
MOTION TO STAY PROCEEDINGS IN THE DISTRICT COURT**

The District of Columbia and Metropolitan Police Department Chief Cathy

Lanier ("the District") oppose plaintiffs' emergency motion to stay litigation in the

district court pending this appeal of a denial of their motion for a preliminary

injunction.[1]  Plaintiffs faced a heavy burden in the district court, where they were

required to demonstrate a clear case of hardship or inequity to justify a stay.  Here,

---

[1]     Plaintiffs do not explain why they labeled this an "emergency" motion.  *See*
D.C. Cir. Rule 27(f) (providing for expeditious consideration "on the ground that, to
avoid irreparable harm, relief is needed in less time than would ordinarily be required
for this [C]ourt to receive and consider a response").  Plaintiffs waited ten days after
the district court denied their stay before seeking relief here, and the parties cannot
even begin discovery before an initial scheduling conference on May 9, 2016.

they must establish that and more, because this Court defers to the district court's decisions regarding management of its own docket.

Plaintiffs cannot satisfy their burden. They offer no evidence or argument suggesting that they will suffer prejudicial harm if forced to proceed with discovery in a lawsuit which they themselves brought, and they offer nothing but speculation that delaying litigation in the district court will somehow reduce the time they must wait to obtain final relief. The District, on the other hand, has a vested interest in proceeding to judgment without unnecessary delay. It has already waited more than a year to undertake discovery and could, if plaintiffs prevail on appeal, be enjoined from enforcing a critical public safety law while litigation is pending.

## BACKGROUND

**1.  The District Court Enters A Preliminary Injunction Barring The District Of Columbia From Enforcing A Key Provision In Its Law Governing The Public Carrying Of Firearms, But This Court Vacates The Order Because It Was Not Issued By A Properly Authorized Judge.**

In 2015, the Council of the District of Columbia enacted legislation to permit public carrying of firearms if, among other qualifications, the applicant for a license has either "good reason to fear injury to his or her person or property" or "any other proper reason for carrying a pistol." D.C. Code § 22-4506(a). To show "good reason to fear injury," an applicant must demonstrate "a special need for self-protection distinguishable from the general community as supported by evidence of specific

threats or previous attacks that demonstrate a special danger to the applicant's life." D.C. Code § 7-2509.11(1)(A). "[O]ther proper reason . . . shall at a minimum include types of employment that require the handling of cash or other valuable objects that may be transported upon the applicant's person." D.C. Code § 7-2509.11(1)(B).

Plaintiffs brought suit against the District in February 2015, claiming that the "good reason" standard violated their Second Amendment rights, and they moved for a preliminary injunction barring the District from enforcing the standard while litigation was pending. District Court ECF Record Document ("RD") 1, 6. Because plaintiffs designated the case as "related" to a previous one assigned to Senior District Court Judge Frederick J. Scullin, a visiting judge from the Northern District of New York, the new case was also assigned to him. 2/3/15 Docket Entry. Judge Scullin entered the preliminary injunction, and the District appealed. RD 13, 24. This Court expedited the appeal, and the case was fully briefed and argued in fall 2015.

In December 2015, the Court issued a decision vacating the preliminary injunction, holding that Judge Scullin had not been properly designated to preside over the case in accordance with the statutory procedures for visiting judges. *Wrenn v. District of Columbia*, 808 F.3d 81, 84 (D.C. Cir. 2015) ("*Wrenn I*"). The case, along with plaintiffs' pending motion for a preliminary injunction, was returned to the district court for reassignment to a judge who could properly preside over the case.

**2.    The District Court Denies Plaintiffs' Motion For A Preliminary Injunction, Then Declines To Stay Further Trial Proceedings Pending The Appeal.**

After the mandate issued in February 2016, the case was assigned to District Court Judge Colleen Kollar-Kotelly.  RD 37; 2/9/15 Docket Entry.  After additional briefing, on March 7, 2016, the district court entered an order denying plaintiffs' motion for a preliminary injunction.  RD 54.  Plaintiffs then filed this appeal.  RD 55.

On March 18, 2016, plaintiffs moved the district court to stay litigation pending the appeal, arguing that "[c]ontinued proceedings . . . would needlessly and substantially waste [their] resources."  RD 59 at 5.  The District opposed, noting its interest in developing "a full record for th[e district c]ourt's—and perhaps the Circuit's—ultimate consideration of the merits," and arguing that plaintiffs had not shown "that the benefits of a stay of discovery would outweigh the prejudice to the District in preparing its defense."  RD 60 at 5, 7.  In reply, plaintiffs saw no "point" in taking discovery at all, arguing that the court could take judicial notice of any relevant facts and that expert testimony would be inappropriate.  RD 62 at 3-4.

The district court denied plaintiffs' motion to stay on April 15, 2016.  RD 63.  It refused to deprive the District of discovery, explaining that "the District is not limited to defending the challenged statutory scheme on the basis of information that was before the D.C. Council at the time of enactment."  RD 63 at 4; *see* RD 63 at 5.

"Indeed, the D.C. Circuit, in what is known as *Heller II*, remanded the case to the district court for further evidentiary development because it could not adequately assess the constitutionality of certain provisions of the statutory scheme governing gun ownership on a record limited to the materials before the D.C. Council." RD 63 at 4 (citing *Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) ("*Heller II*")). And "on the appeal that followed that remand, in *Heller III*, the D.C. Circuit upheld certain elements of the statutory scheme explicitly on the bases of the evidence developed on remand, while it also concluded that other evidence developed was insufficient to uphold other features of the statutory scheme." RD 63 at 4 (citing *Heller v. District of Columbia*, 801 F.3d 264, 277-79 (D.C. Cir. 2015) ("*Heller III*")). Moreover, the court noted, the *Heller III* Court affirmed the district court's admission of expert testimony and ultimately "relied on the admitted expert testimony in resolving the merits." RD 63 at 5-6 (citing *Heller III*, 670 F.3d at 275-77).

Applying the familiar standard for stays of discovery, the court found that plaintiffs had failed to show any need for a stay. It rejected as "highly speculative" plaintiffs' prediction that this appeal would "strongly shape, if not wholly resolve" their lawsuit, especially "given the emphasis of the *Heller II* and *Heller III* [C]ourts on the importance of a full factual record for resolving constitutional questions pertaining to the Second Amendment." RD 63 at 6. Moreover, the court held, plaintiffs had "not

shown that the equities favor staying these proceedings." RD 63 at 8. They had

"hardly elaborate[d] on the alleged harm to them, which," the court noted, "d[id] not

seem to exceed the harm *necessarily* entailed in participating in this litigation, which

they instigated in the first instance." RD 63 at 8. The court concluded:

> Plaintiffs filed this litigation; Plaintiffs filed a motion for preliminary injunction; and Plaintiffs have now filed an interlocutory appeal with respect to the denial of that injunction. They are wholly within their rights to take all of these steps, and the [c]ourt has no place in second-guessing Plaintiffs' litigation strategy. But Plaintiffs may not follow all of these steps and then be heard to complain that additional proceedings in this [c]ourt following the usual course of events are a waste of their resources.

RD 63 at 8-9.

## DISCUSSION

**I.    The District Court Did Not Abuse Its Discretion By Denying Plaintiffs' Request To Stay Trial Proceedings In A Lawsuit They Initiated While Their Interlocutory Appeal Is Pending In This Court.**

"The power to stay proceedings is . . . inherent in every court," which may take

steps to "control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants." *Air Line Pilots Ass'n v. Miller*, 523

U.S. 866, 879 n.6 (1998) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55

(1936)). "The proponent of a stay bears the burden of establishing its need," *Clinton*

*v. Jones*, 520 U.S. 681, 708 (1997), and "must make out a clear case of hardship or

inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else," *Landis*, 299 U.S. at 255.

Whether a stay is warranted "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Air Line Pilots*, 523 U.S. at 879 n.6. The decision is therefore "left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983) (citing *Landis*, 299 U.S. at 254-55); *see also Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) ("A district court's decision to stay discovery is reviewed for abuse of discretion."); *CFTC v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (explaining that, because "[t]he ruling on the stay involve[s] an exercise of discretion," courts "focus[] first on . . . whether the appellants have carried the weighty burden of showing an abuse of discretion").

Plaintiffs do not satisfy their heavy burden to show an abuse of discretion. They do not even argue that the district court abused its discretion by denying their motion to stay trial proceedings. Nor do they suggest that they will suffer any hardship, beyond that incidental to prosecuting the lawsuit they initiated, if they must proceed with discovery in the district court while their appeal is pending. The District and the public, however, could be injured by additional delay, because it is possible

that this appeal will result in a preliminary injunction barring the District from enforcing its critical public safety law while litigation is pending in the district court.

### A. Plaintiffs do not articulate any harm that would warrant a stay of litigation.

The district court found that plaintiffs failed to demonstrate any harm beyond that "*necessarily* entailed in participating in this litigation, which they instigated in the first instance." RD 63 at 8. Plaintiffs offer no evidence or authority suggesting that, in reaching this conclusion, the district court abused its discretion.

#### 1. Plaintiffs offer nothing more than speculation that proceeding with litigation will waste the parties' time and resources.

Plaintiffs argue that their lawsuit will "all but surely" be resolved in this appeal, making further litigation unnecessary. Mot. 12-13. They question whether there is any "point" in engaging in discovery, weighing of evidence, or examining expert witnesses. Mot. 16-17. Instead, they argue, this Court will decide the constitutionality of the "good reason" standard by applying a categorical analysis similar to that applied by the Supreme Court when it struck laws banning the possession of handguns in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*"), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Mot. 11-14.

The district court, however, properly found this prediction "highly speculative." RD 63 at 6. The Court is more likely to adopt some level of means-ends scrutiny,

requiring additional evidentiary development in the district court, than it is to accept plaintiffs' view of categorical unconstitutionality. Since *Heller I*, this Court has applied intermediate scrutiny to every law challenged under the Second Amendment. *See, e.g.*, *Heller II*, 670 F.3d at 1253; *Schrader v. Holder*, 704 F.3d 980, 989 (D.C. Cir. 2013); *Heller III*, 801 F.3d at 272. Other circuits have done the same. *See Dearth v. Lynch*, 791 F.3d 32, 39 (D.C. Cir. 2015) (noting that "the overwhelming majority of cases from our sister circuits have . . . applied intermediate scrutiny to various statutes regulating firearms" (Henderson, J., dissenting)) (remanded for unrelated findings).

Moreover, the Council based the "good reason" standard on similar provisions in New York, Maryland, and New Jersey, all of which "have withstood constitutional challenges in federal courts of appeal." Committee on the Judiciary and Public Safety, D.C. Council, Report on Bill 20-930, at 2, 9 & n.39 (Nov. 26, 2014). Those laws were upheld by the Second, Third, and Fourth Circuits, all of which held that, if the "good reason" standard even implicates a Second Amendment right, it should be measured under intermediate scrutiny. *See Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013); *Drake v. Filko*, 724 F.3d 426, 430 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 2134 (2014); *Woollard v. Gallagher*,

712 F.3d 865, 876 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 422 (2013). No circuit holds otherwise.[2]

In this interlocutory appeal, this Court certainly could address the likelihood that plaintiffs will prevail in their constitutional challenge to the "good reason" standard. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (describing factors justifying a preliminary injunction, including likelihood of success on the ultimate merits); *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (same). But it probably will not resolve the underlying question: whether the "good reason" standard is *actually* unconstitutional. Under any level of means-ends scrutiny, such a decision can only be reached on a full record. After all, this Court in *Heller II* remanded Second Amendment claims for additional factual development even after discovery had been conducted and final judgment had been entered. 670 F.3d at 1259-60. Those facts were critical to this Court's determination, in *Heller III*, that some regulations survived constitutional scrutiny while others did not. 801 F.3d at 277-79; *see also Heller v. District of Columbia*, 814 F.3d 480 (D.C. Cir. 2016) (Millett, J., concurring

---

[2]  As the district court has noted, plaintiffs' continued reliance on *Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014), is misplaced. RD 54 at 15. The Ninth Circuit vacated that panel decision more than a year ago, *Peruta v. Cty. of San Diego*, 781 F.3d 1106, 1106-07 (9th Cir. 2015), and heard argument en banc on June 16, 2015.

in denial of rehearing en banc) (emphasizing "shortcomings in the record" before the *Heller III* Court that undergirded the conclusions that certain provisions were unconstitutional).  And plaintiffs are simply wrong when they claim that expert testimony "has never proven dispositive (if it has made any appearance at all) in this type of case."  Mot. 16.  In *Woollard*, the Fourth Circuit focused on the declarations of expert witnesses when it held that Maryland's "good reason" standard "advances the objectives of protecting public safety and preventing crime" and therefore satisfies the first prong of intermediate scrutiny.  712 F.3d at 877 n.6, 879-80; *see also Heller III*, 801 F.3d at 272 (affirming district court's decision to admit testimony of three experts based on their "substantial relevant experience and the sources they cited in support of their conclusions," including "stories, studies, and research").

Even if this Court were to deviate from the prevailing authority and apply strict scrutiny, a full record would be necessary to determine whether the law could satisfy that high standard.  In *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), the Supreme Court applied strict scrutiny to a ban on the provision of "material support" to foreign terrorist organizations when it precluded pure speech that advanced only legitimate activities.  *Id.* at 28-29.  It explained that whether the law was necessary to combat terrorism "is an empirical question" affected by evidence beyond what Congress had considered when it enacted the law.  *Id.* at 29-33.  Whether the "good

reason" standard is necessary to prevent crime and promote public safety is similarly empirical and fact-driven and thus would require development of an evidentiary record no matter the level of scrutiny applied.

Moreover, and in any event, it is not even certain that this Court will rule on plaintiffs' likelihood of success on the merits of their claim. The Court may well decline to reach that question on such a scant record, instead affirming denial of a preliminary injunction by balancing the equities. *See Nken*, 556 U.S. at 435; *Sherley*, 644 F.3d at 392. Given the difference in the standards for a preliminary injunction and those applied to a final judgment, delaying litigation is simply unwarranted. As the Ninth Circuit has explained:

> To the extent that a desire to get an early glimpse of our view of the merits of the underlying legal issues in this litigation motivated this tactic, it was both misconceived and wasteful. A preliminary injunction is, as its name implies, preliminary to the trial—not to an appeal. We believe that this case could have proceeded to trial, or to the summary judgment stage, in less time than it took the parties to submit these cases for appeal. Had the parties pursued this course, they would have achieved a prompt resolution of the merits. But the parties did not pursue this course; therefore, we are conducting our review on the basis of a limited record. On the basis of this limited record and the status of the litigation, we may do no more than determine whether the district court abused its discretion in determining that serious legal questions were raised and that the balance of hardships tipped sharply in favor of the owners and crew. Our resolution of these issues will not determine the merits of the underlying legal issues presented in this litigation, and will only temporarily affect the rights of the parties.

*Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 693 (9th Cir. 1988).

Plaintiffs complain about the year-long delay caused by procedural irregularities in *Wrenn I*—irregularities which they helped cause by designating this case as "related" to another case previously before Judge Scullin, even though that case involved a different law with critically different features, as Judge Scullin later explained.  Mot. 2; *see Palmer v. District of Columbia*, No. 09-CV-1482(FJS), RD 92 at 7 (May 18, 2015).  They worry that proceeding in the district court will "delay[] [their] day in this Court further yet."  Mot. 2.  But a stay of trial proceedings is likely to result in *more* delay, not less.  And the only way a stay will lessen the litigation burden on plaintiffs is if this Court reaches beyond the narrow preliminary-injunction question posed in this appeal.  As the district court noted, plaintiffs' prediction that it will do so is "highly speculative."[3]  RD 63 at 6.

---

[3]      Contrary to plaintiffs' assertion (Mot. 13), this case is not like *Fonville v. District of Columbia*, 766 F. Supp. 2d 171 (D.D.C. 2011), where the District moved for a stay of litigation in the district court pending a ruling in the D.C. Court of Appeals.  *Id.* at 173.  There, a stay was warranted because the D.C. Court of Appeals was considering whether high-ranking members of the police force could challenge their demotion under a local statute, and that court's decision would be dispositive of an identical issue raised in the district court.  *Id.*

2.     The possibility that a final judgment will render this appeal moot does not amount to "severe harm" justifying a stay.

Plaintiffs correctly note that, if the district court enters a final judgment before this appeal is decided, that judgment will likely render this appeal moot. Mot. 17-18. This is because a preliminary injunction is just that—*preliminary*. Its sole purpose is to protect a party's interest (usually by preserving the status quo) until a final judgment is reached. Once that occurs, the need for a preliminary injunction is extinguished, along with any need for a ruling on whether the district court was right to grant or deny it. *See Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 314 (1999) ("Generally, an appeal from the grant of a preliminary injunction becomes moot when the trial court enters a permanent injunction, because the former merges into the latter."). It makes no sense to stay the district court proceedings because a final judgment might eliminate plaintiffs' need for preliminary relief. And while plaintiffs argue that "intervening mootness is a sufficient ground upon which to stay district court proceedings pending an interlocutory appeal," none of the cases they cite even relate to such a situation. *See* Mot. 18 (citing *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004) (discussing irreparable harm caused by a violation of a contract's exclusivity provision); *Plain v. Murphy Family Farms*, 296 F.3d 975, 981 (10th Cir. 2002) (discussing failure of

decedent's children to move to stay litigation after trial court denied their motion to intervene); *Harris v. Bd. of Governors of Fed. Reserve Sys.*, 938 F.2d 720, 721-22 (7th Cir. 1991) (discussing failure of party to seek stay of document-production order before it was mooted by another party's compliance)).

If the possibility that a final judgment would moot an interlocutory appeal were grounds for a stay, *every* interlocutory appeal involving preliminary relief would warrant a stay of litigation in the district court. Plaintiffs suggest that this is so, at least when the case involves a novel constitutional question; indeed, they claim that a stay in this situation is "standard procedure." Mot. 8. But they offer no authority to support that assertion. In three of the four district court cases they cite, all of the parties *agreed* to a stay of proceedings, and the court merely acceded to their wishes. *See* Mot. 15-16 (citing *Jackson v. City & Cty. of S.F.*, N.D. Cal. 09-2143, RD 152 (Dec. 27, 2012) (joint stipulation); *Fyock* v. *City of Sunnyvale*, N.D. Cal. No. 13-5807, RD 63 (Mar. 31, 2014) (joint stipulation); *Baker v. Kealoha*, No. 11-528, RD 61 (June 14, 2012) (no opposition)). In the fourth case, the *plaintiffs* opposed a stay, but the district court exercised its discretion to grant it and they did not seek relief in the circuit court. *Ezell v. City of Chi.*, No. 10-C-5135, 2011 U.S. Dist. LEXIS 38547, at *5 (N.D. Ill. Apr. 11, 2011). That case does not suggest that the district court would have abused its discretion had it issued a contrary ruling. Moreover, in that case the

Second Amendment Foundation—also a plaintiff here—argued *against* a stay despite the novel constitutional question at issue. It noted critical differences between a preliminary injunction and a permanent injunction and argued that "the analysis employed for the two types of injunctions are quite different." *Ezell* RD 92 at 5. That logic is equally true here as there.

Plaintiffs complain that, if this appeal is mooted by a final judgment, they would have to "start over with a new appeal," even though their "resources are not unlimited." Mot. 17, 18. But "[l]itigation costs, standing alone, do not rise to the level of irreparable injury." *McSurely v. McClellan*, 697 F.2d 309 n.13 (D.C. Cir. 1982). "As [this Court] observed in *Virginia Petroleum Jobbers* [*v. Federal Power Com.*, 259 F.2d 921 (D.C. Cir. 1958),] 'mere injury, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough' to satisfy the requirement of irreparable injury." *Id.* (quoting *Va. Petroleum Jobbers*, 259 F.2d at 925). Plaintiffs chose to bring this appeal, even though it would not affect their likelihood of success in the district court. Given this choice, they cannot reasonably complain that the appeal stretches their resources too thin and that the District must therefore wait to develop a record and defend its law.

Plaintiffs also complain that, if this appeal is mooted by a final judgment, they will suffer because their "fundamental rights are being violated." Mot. 18. But this is

precisely what the underlying lawsuit is meant to determine. A final judgment may well bring them relief before any ruling in this appeal. Indeed, in *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015)—a case cited by plaintiffs, Mot. 15—the Ninth Circuit noted that a plaintiff's stipulation to a stay of litigation pending appeal made it "unlikely [he] could make the requisite showing of irreparable harm to support the issuance of a preliminary injunction." *Id.* at 996.

> 3. This appeal will not divest the district court of jurisdiction to consider the constitutionality of the "good reason" standard.

Plaintiffs argue that, "at some point, a stay would be required" because the district court "lacks jurisdiction to reach issues pending before this Court on appeal." Mot. 16. Not so. The general rule for an interlocutory appeal of a preliminary injunction is that it "does not defeat the power of the trial court to proceed further with the case." 16 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3921.2 (3d ed. 2016). Rather, "the District Court's findings, and [the appellate court's] observations as to the governing law made in this opinion, are tentative and provisional, in the sense that different findings or conclusions might be warranted after a trial on the merits." *W. Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986). Thus, federal courts of appeals have repeatedly held that the district court can and should proceed with litigation while an interlocutory appeal is

pending. *See*, *e.g.*, *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) ("Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, jurisdiction is retained where, as here, the appeal is from an order granting or denying a preliminary injunction."); *Ry. Labor Execs.' Ass'n v. Galveston*, 898 F.2d 481, 481 (5th Cir. 1990) ("[T]he pendency of the interlocutory appeal from the district court's judgment denying the preliminary injunction did not divest the district court of jurisdiction to proceed with other aspects of the case."); *W. Pub. Co.*, 799 F.2d at 1229 (similar). Indeed, this is precisely what the Second Amendment Foundation argued when it opposed an identical stay in *Ezell*. *See Ezell* RD 92 at 3 (quoting *Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006) ("[A]n appeal taken from an interlocutory decision does not prevent the district court from finishing its work and rendering a final decision. This is so for appeals concerning preliminary injunctions . . . .")).

**B.** **So long as there is a threat of a preliminary injunction barring enforcement of the "good reason" standard, the District and the public have a vested interest in limiting unnecessary delay in reaching a final judgment.**

In this appeal, plaintiffs challenge the district court's denial of a preliminary injunction barring the District from enforcing the "good reason" standard while litigation is pending. RD 55. Although the District believes this Court will affirm the

ruling, it is possible that this Court will disagree and order the preliminary injunction plaintiffs seek. If that occurs, the District will be barred from enforcing a key provision in a critically important public safety law while further litigation is pending. Plaintiffs suggest that litigation in the district court will likely take at least nine months to complete. Mot. 17 (noting the likelihood that summary judgment briefing will conclude in February 2017). Thus, if a stay is granted and plaintiffs prevail on appeal, the District will likely be barred from enforcing the "good reason" standard for nine more months, *even if it ultimately prevails on a full record*. The District therefore has a tangible interest in litigating this case now, rather than waiting to even start discovery until this Court has ruled on the interlocutory appeal.

As the district court noted, the District's interest in this matter aligns with the interest of the public. RD 63 at 7 ("[I]t is readily apparent that the only party in this case that can represent the interests of the District of Columbia, its citizens, and its taxpayers is the District of Columbia."). Indeed, the Supreme Court has held that the interests of the government and the public "merge" when the government is opposing injunctive relief. *Nken*, 556 U.S. at 435. The "good reason" standard was enacted by the duly elected representatives of District residents, and the public has an interest in enforcing the standard. Plaintiffs' wish to avoid the burdens of litigating the case they initiated, so they can concentrate on their own interlocutory appeal, cannot outweigh

the public's interest in limiting the risk that it will be barred from enforcing the "good reason" standard while it defends the law on a full record in the district court.

In *Wrenn I*, this Court granted the District's motion to stay the preliminary injunction entered by the district court, holding that the District had "satisfied the requirements for a stay pending appeal" and could therefore enforce the "good reason" standard during the months it would take to decide whether plaintiffs were entitled to a preliminary injunction. *See* Order Granting Mot. to Stay (June 29, 2015). And two weeks earlier, the Court had entered an administrative stay, ensuring that the District could enforce the "good reason" standard while it considered the District's full stay motion. *See* Order Granting Administrative Stay (June 12, 2015). This Court should similarly conclude here that the District has an interest in enforcing the "good reason" standard while litigation is pending, and that the District therefore has a right to litigate this case now, rather than wait and see whether the Court agrees with plaintiffs' claim that they are entitled to preliminary relief pending a final judgment.

## CONCLUSION

Plaintiffs' motion for a stay of litigation should be denied.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of
Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

/s/ Holly M. Johnson
HOLLY M. JOHNSON
Assistant Attorney General
Bar Number 476331
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 442-9890
(202) 715-7713 (fax)
holly.johnson@dc.gov

April 2016

# CERTIFICATE OF SERVICE

I hereby certify that, on April 28, 2016, this opposition was served through the

Court's ECF system to:

Alan Gura, Esq.
Gura & Possessky, PLLC
916 Prince Street, Suite 107
Alexandria, VA 22314

/s/ Holly M. Johnson
HOLLY M. JOHNSON