No. 16-7025

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

BRIAN WRENN, *et al.*,

*Appellants,*

v.

DISTRICT OF COLUMBIA, *et al.*,

*Appellees.*

On Appeal from the United States District Court
for the District of Columbia

---

## BRIEF OF MARYLAND, CALIFORNIA, CONNECTICUT, HAWAI'I, ILLINOIS, IOWA, MASSACHUSETTS, NEW YORK, OREGON, AND WASHINGTON IN SUPPORT OF APPELLEES

---

Office of the Attorney
General of Maryland
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Phone: (410) 576-7906
Fax: (410) 576-6955
mfader@oag.state.md.us
jauerbach@oag.state.md.us

BRIAN E. FROSH
*Attorney General of Maryland*

MATTHEW J. FADER
  *Of counsel* (not admitted in DC)
PATRICK B. HUGHES
  *Of counsel* (not admitted in DC)
JOSHUA N. AUERBACH
Assistant Attorneys General

Counsel for *Amicus Curiae* State of Maryland
Additional Counsel Listed on Inside Cover

(additional counsel continued from front cover)

KAMALA D. HARRIS
*Attorney General of California*
1300 I Street
Sacramento, California 95814

GEORGE JEPSEN
*Attorney General of Connecticut*
55 Elm Street
Hartford, Connecticut 06106

DOUGLAS S. CHIN
*Attorney General of Hawaii*
425 Queen Street
Honolulu, Hawai'i 96813

LISA MADIGAN
*Attorney General of Illinois*
100 West Randolph, 12th Floor
Chicago, Illinois 60601

TOM MILLER
*Attorney General of Iowa*
1305 East Walnut Street
Des Moines, Iowa 50319

MAURA HEALEY
*Attorney General of Massachusetts*
One Ashburton Place
Boston, Massachusetts 02108

ERIC T. SCHNEIDERMAN
*Attorney General of New York*
120 Broadway
New York, New York 10271

ELLEN F. ROSENBLUM
*Attorney General of Oregon*
1162 Court St. N.E.
Salem, Oregon 97301

ROBERT W. FERGUSON
*Attorney General of Washington*
1125 Washington Street SE
PO Box 40100
Olympia, Washington 98504-0100

## Corporate Disclosure Statement

As states, all *amici* are governmental entities with no reportable parent companies, subsidiaries, affiliates, or similar entities under Fed. R. App. P. 26.1(a).

# TABLE OF CONTENTS

**Page**

Identity of *Amici Curiae* ............................................................1

SUMMARY OF THE ARGUMENT ......................................................2

ARGUMENT ...........................................................................5

I. THE INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS PROTECTED BY THE SECOND AMENDMENT DOES NOT PRECLUDE REASONABLE REGULATION OF FIREARMS. .....................................................................5

II. ASSUMING THE DISTRICT OF COLUMBIA'S LAW REGULATES CONDUCT WITHIN THE SCOPE OF THE SECOND AMENDMENT, THE CORRECT STANDARD UNDER THIS COURT'S PRECEDENTS IS INTERMEDIATE SCRUTINY. ...........................................................................7

III. UNDER INTERMEDIATE SCRUTINY, THE DISTRICT'S JUDGMENTS REGARDING PUBLIC SAFETY ARE ENTITLED TO SUBSTANTIAL DEFERENCE.........................................................................15

IV. PRIOR RESTRAINT DOCTRINE DOES NOT APPLY OUTSIDE OF THE FIRST AMENDMENT CONTEXT. ......................................................20

CONCLUSION ......................................................................22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Board of Trustees of the State of New York v. Fox*, 492 U.S. 469 (1989) ........ 15, 16

*Bonidy v. United States Postal Serv.*, 790 F.3d 1121 (10th Cir. 2015) ............ 11, 12

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968) ...............21

*Dearth v. Lynch*, 791 F.3d 32 (D.C. Cir. 2015) .....................................................8, 19

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...........................2, 5, 6, 10, 12

*Drake v. Filko,* 724 F.3d 426 (3d Cir. 2013) ........................................ 13, 16, 19, 21

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ..............................22

*Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015) ...........................9

*Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) .....................................................7

*Grace v. District of Columbia*, ___ F. Supp. 3d ___, 2016 WL
    2908407 (D.D.C. May 17, 2016) ...................................................................3, 11

*Heller v. District of Columbia*, 670 F.3d 1244
    (D.C. Cir. 2011) ........................................... 3, 4, 7, 8, 9, 10, 14, 15, 16, 18

*Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) ........................ 10, 11

*Hightower v. City of Boston*, 693 F.3d 61 (1st Cir. 2012) ......................................21

*Tyler v. Hillside County Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014) ..................10

*Jackson v. City of San Francisco*, 746 F.3d 953 (9th Cir. 2014) .................... 11, 16

*Kachalsky v. County of Westchester*,
    701 F.3d 81 (2d Cir. 2012) ................................ 8, 9, 11, 12, 13, 16, 19, 20, 21, 22

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ..................................... 2, 5, 6, 7

*National Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, &*
*Explosives*, 700 F.3d 185 (5th Cir. 2012) ............................................ 9, 12, 16, 17

*Near v. Minnesota*, 283 U.S. 697 (1931) ................................................................21

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242
(2d Cir. 2015)..........................................................................................................7

*Peruta v. County of San Diego*, ___ F.3d ___, 2016 WL 3194315
(9th Cir. 2016)....................................................................................................8, 14

*Schrader v. Holder*, 704 F.3d 980 (D.C. Cir. 2013) ......................................... 10, 19

*Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622 (1994).......................... 17, 19

*Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180 (1997)............... 6, 17, 18, 19

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010)................................ 9, 12, 20

*United States v. Cruikshank*, 92 U.S. 542 (1876) .....................................................5

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010).............................. 7, 9, 16

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011)................. 9, 12, 13, 21

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010)............................ 7, 9, 12, 16

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) .............................................7

*United States v. Williams*, 616 F.3d 685 (7th Cir. 2010)....................................9, 17

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)................................. 16, 17, 18

*Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013) .......... 7, 8, 9, 13, 16, 19, 20, 2

*Wrenn v. District of Columbia*, ___ F. Supp. 3d ___, 2016
WL 912174 (D.D.C. Mar. 7, 2016) ............................................2, 3, 4, 10, 11, 19

**Constitutional Provisions**

U.S. Const., amend. I .......................................................... 5, 6, 7, 15, 17, 19, 20, 21

U.S. Const., amend. II
............................ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20, 21, 22

**Miscellaneous**

Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 Clev. St. L. Rev. 1 (2012) ............................................................................................9

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487 (2004) .................................13

## Identity of *Amici Curiae*

Maryland, California, Connecticut, Hawai'i, Illinois, Iowa, Massachusetts, New York, Oregon, and Washington file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure. The *Amici* States seek to protect their sovereign prerogative to enact and implement legislation that advances their compelling interests in promoting public safety, preventing crime, and reducing the harmful effects of firearm violence. The *Amici* States have taken different approaches to addressing the problem of firearm violence based on determinations about what measures will best meet the needs of their citizens. They join this brief not because they necessarily believe that the District's approach would be optimal for all of the *Amici* States, but because they believe that the challenged regulations represent a policy choice that the District is constitutionally free to adopt.

The enactment by states of reasonable firearm regulations that are substantially related to the achievement of an important governmental interest is fully compatible with the right to keep and bear arms protected by the Second Amendment. The *Amici* States also are concerned that the erroneous interpretation of the Second Amendment advanced by the appellants in this case would, if adopted, threaten to tie the hands of states in responding to real threats to public safety.

## SUMMARY OF THE ARGUMENT

The right to keep and bear arms recognized by the Supreme Court in *District of Columbia v. Heller* has never been interpreted as a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatsoever purpose." 554 U.S. 570, 626 (2008). The Supreme Court also has never implied that the Second Amendment precludes states from enacting reasonable firearms regulations to promote public safety. To the contrary, the Second Amendment limits, but "by no means eliminates," the ability of states to "experiment[] with reasonable firearms regulations." *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010). The District of Columbia's requirement that applicants for a concealed handgun permit must have a "good reason" or "proper reason" to carry a handgun in public is such a reasonable regulation.

Before this Court are competing decisions by two different district court judges: this case, in which the lower court denied a preliminary injunction against enforcement of the District's "good reason" requirement, and a second case, in which the district court granted a preliminary injunction against enforcement of the same law, *Matthew Grace, et al. v. District of Columbia*, No. 16-7067. A central element of disagreement between the decisions is over the proper standard of scrutiny to apply to the challenged law. The district court in this case hewed closely to this Court's precedents and the precedents of the Supreme Court, concluding that

even if the challenged law implicated the Second Amendment right, it did not substantially burden the core Second Amendment right and, therefore, was subject to at most intermediate scrutiny. *Wrenn v. District of Columbia*, ___ F. Supp. 3d ___, 2016 WL 912174, at *7 (D.D.C. Mar. 7, 2016). In *Grace*, by contrast, the district court departed from the jurisprudence of the Supreme Court, this Court, and every circuit court to have addressed the constitutionality of a similar law by: (1) identifying a new "core" Second Amendment right outside the home; (2) concluding that a "good reason" requirement substantially burdens that new core Second Amendment right; and (3) applying strict scrutiny to a law regulating the public carry of handguns. *Grace v. District of Columbia*, ___ F. Supp. 3d ___, 2016 WL 2908407, *4-14 (D.D.C. May 17, 2016).

This Court has held that intermediate scrutiny applies to laws that do not impose a substantial burden on the core Second Amendment right. *Heller v. District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir. 2011) ("*Heller II*"). In this case, the court below correctly applied this rule in holding that, assuming the challenged law implicates the Second Amendment right at all, intermediate scrutiny is the strictest level of scrutiny that could properly apply to the challenged law. *Wrenn*, 2016 WL 912174, at *8. As this Court has repeatedly held, intermediate scrutiny is the highest form of scrutiny that can apply to laws that do not impose a substantial burden on the core Second Amendment right of law-abiding, responsible individuals to possess

arms for defense of home and hearth. *E.g.*, *Heller II*, 670 F.3d at 1257. Laws that regulate the carry of arms outside the home, where the government has always had more latitude to regulate in the interest of public safety, are thus constitutional so long as they are "substantially related to an important governmental objective." *Wrenn*, 2016 WL 912174, at *10 (quoting *Heller II*, 670 F.3d at 1257). Under intermediate scrutiny, the chosen means need not be the least restrictive means available to serve the District's interest; it is sufficient if they are reasonably or substantially related to that objective. *Heller II*, 670 F.3d at 1258. The District's "good reason" requirement satisfies this test.

Finally, the Appellants' contention below that the District's law should be analyzed under the framework of the prior restraint doctrine, which has been developed in the context of First Amendment challenges based on principles unique to free speech, has been properly rejected by every Court to have considered it. The call for application of that doctrine in the Second Amendment context misapprehends both the purpose of the doctrine and important differences between the First and Second Amendments.

# ARGUMENT

## I. THE INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS PROTECTED BY THE SECOND AMENDMENT DOES NOT PRECLUDE REASONABLE REGULATION OF FIREARMS.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The right to keep and bear arms, though codified in the Second Amendment, predates the Bill of Rights; it is a pre-existing right that is neither "granted by the Constitution" nor "dependent upon that instrument for its existence." *Heller*, 554 U.S. at 592 (quoting *United States v. Cruikshank*, 92 U.S. 542, 553 (1876)). Thus, the scope of the right is not defined exclusively by the Second Amendment's text, but by, *inter alia*, the scope it was "understood to have when the people adopted [the amendment]." *Id.* at 634-35. As a result, although the text of the amendment does not set forth any limitation on the right, it has never been interpreted as "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.

The Supreme Court, in *Heller* and *McDonald*, repeatedly emphasized that the Second Amendment is neither "subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S. at 780, nor is it a superior right entitled to more vigorous judicial enforcement. Just as the First Amendment is subject to numerous limitations unstated in its text, the "Second Amendment is no

different." *Heller*, 554 U.S. at 635. Thus, the Court does "not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as [it] do[es] not read the First Amendment to protect the right of citizens to speak for *any purpose*." *Id.* at 595 (emphasis in original); *see also McDonald*, 561 U.S. at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute.").

The codification of the right to keep and bear arms in the Second Amendment, and as incorporated against the states through the Fourteenth Amendment, necessarily "takes certain policy choices off the table," including a complete ban on the possession of all handguns kept for self-defense within the home. *Heller*, 554 U.S. at 636. But taking certain policy choices off the table does not leave the table bare. The people's democratically chosen representatives are not forbidden from considering every policy proposal that might in some way limit the use or enjoyment of constitutional rights, even fundamental ones. Just as legislative judgments about economic matters "cannot be ignored or undervalued simply because [appellants] cas[t] [their] claims under the umbrella of the First Amendment," *Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180, 224 (1997) ("*Turner II*") (alterations in original; internal quotation omitted), so too legislative judgments about matters of public safety cannot be ignored or undervalued when challenged under the umbrella of the Second Amendment. Indeed, the Supreme Court has made clear that

although constitutional protection of the Second Amendment right imposes "limits" on policy alternatives, it "by no means eliminates" the states' "ability to devise solutions to social problems that suit local needs and values." *McDonald*, 561 U.S. at 784-85. The Court has thus affirmed that "State and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *Id.* at 785 (internal citation omitted).

## II. ASSUMING THE DISTRICT OF COLUMBIA'S LAW REGULATES CONDUCT WITHIN THE SCOPE OF THE SECOND AMENDMENT, THE CORRECT STANDARD UNDER THIS COURT'S PRECEDENTS IS INTERMEDIATE SCRUTINY.

This Court, like several other circuits, has adopted a two-pronged approach for analyzing Second Amendment claims. *Heller II*, 670 F.3d at 1252; *see also New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 252-53 (2d Cir. 2015), *cert. denied* ___ U.S. ___, 2016 WL 632684 (2016); *Fyock v. Sunnyvale*, 779 F.3d 991, 996 (9th Cir. 2015); *Woollard v. Gallagher*, 712 F.3d 865, 874-75 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 422 (2013); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *United States v. Skoien*, 614 F.3d 638, 639-43 (7th Cir. 2010) (en banc). Under this approach, this Court "ask[s] first whether a particular provision impinges upon a right protected by the Second Amendment." *Heller II*, 670 F.3d at 1252. "[I]f it does, then [this Court] go[es] on to determine whether the particular provision

passes muster under the appropriate level of constitutional scrutiny." *Id.*

As an initial matter, it is not clear that the District's "good reason" requirement regulates conduct protected by the Second Amendment at all. This Court, like many others, has not yet determined, and need not determine in this case, whether the protections afforded by the Second Amendment extend outside the home at all. *See Dearth v. Lynch*, 791 F.3d 32, 40-41 (D.C. Cir. 2015) (Henderson, J., dissenting) (recognizing that the scope of the Second Amendment outside the home remains undecided in this Circuit); *see also Woollard*, 712 F.3d at 867 (assuming but not deciding that right has some application outside the home); *Kachalsky v. County of Westchester*, 701 F.3d 81, 89, 96 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013) (proceeding on the "assumption" that right has "*some* application" outside home).

Moreover, even if the pre-existing right codified in the Second Amendment extends outside the home to some extent, that does not necessarily suggest that it includes a broad right to carry in public an easily-concealable, highly-lethal firearm based only on a subjectively-held belief that it may become useful for self-defense. To the contrary, the longstanding history of significant restrictions on public carry of firearms demonstrates that the pre-existing right was not generally understood to extend so far. *See, e.g.*, *Peruta v. County of San Diego*, ___ F.3d ___, 2016 WL 3194315, *6-9 (9th Cir. 2016) (*en banc*) (holding, based on historical examination of the regulation and prohibition of concealed carry, that concealed carry is not

protected by the Second Amendment); Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 Clev. St. L. Rev. 1, 4, 8-40 (2012) (discussing the history of restrictions on the public carrying of firearms in the United States).

Even if the Court were to assume, or find, that the challenged law implicates the protection of the Second Amendment, it is still constitutional if it "passes muster under the appropriate level of constitutional scrutiny." *Heller II*, 670 F.3d at 1252. The proper level of scrutiny, in turn, "depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Id.* at 1257 (quoting *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)).

This Court has adopted intermediate scrutiny as the standard applicable to firearms regulations that implicate the Second Amendment but that do not impose a "substantial burden" on the "core right" protected by the Amendment. *Id.* at 1257-58. The vast majority of other circuits to consider the issue have come to the same conclusion. *See, e.g.*, *Woollard*, 712 F.3d at 878-79; *Kachalsky*, 701 F.3d at 96-97; *Marzzarella*, 614 F.3d at 97-98; *National Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 207 (5th Cir. 2012); *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *Reese*, 627 F.3d at 802; *cf. Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir.), *cert. denied* 136 S. Ct. 447 (2015) (upholding

constitutionality of ban on assault weapons and large capacity magazines, but not adopting any of the traditional standards of scrutiny).[1]

Applying that test, this Court has specifically stated that the "'core lawful purpose'" protected by the Second Amendment and recognized by the Supreme Court in *Heller* is "self-defense in the home." *Heller II*, 670 F.3d at 1255 (quoting *Heller*, 554 U.S. at 630); *see also Schrader v. Holder*, 704 F.3d 980, 988 (D.C. Cir. 2013) (core Second Amendment right is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home" (quoting *Heller*, 554 U.S. at 635)). This court in *Heller II* thus applied intermediate scrutiny to gun registration laws that did not interfere with the ability of individuals to keep firearms "for the purpose of self-defense in the home." 670 F.3d at 1255. Indeed, this Court recently reaffirmed that understanding, explaining that the "'core' of the Second Amendment is the right to use a firearm for self-defense in the home." *Heller v. District of Columbia*, 801 F.3d 264, 289 (D.C. Cir. 2015) ("*Heller III*").

However, despite these clear pronouncements, the two district court decisions under review took very different approaches in identifying the "core right" protected by the Second Amendment. In this case, the district court correctly applied this

---

[1] In *Tyler v. Hillside County Sheriff's Dep't*, a divided panel of the Sixth Circuit concluded that strict scrutiny should apply to Second Amendment challenges. 775 F.3d 308 (6th Cir. 2014), *rehearing en banc granted and opinion vacated* April 21, 2015. The Sixth Circuit subsequently granted rehearing *en banc*, vacating the panel opinion, and has not yet issued a decision.

Court's jurisprudence in concluding that at most intermediate scrutiny was warranted. Given the "emphasis" that the Supreme Court in *Heller* and this Court in *Heller II* and *Heller III* placed on the home when discussing the core Second Amendment right, the lower court persuasively reasoned that a regulation governing only the "*public* carrying of handguns" does not implicate the core right and thus merits "no higher level of scrutiny" than intermediate scrutiny. *Wrenn*, 2016 WL 912174, at *7 (emphasis in original). By contrast, the district court in *Grace* misidentified the core Second Amendment right as applying equally within the home and outside of the home. *Grace*, 2016 WL 2908407, at *11. That conclusion is directly at odds with this Court's statements in *Heller II* and *Heller III* and the Supreme Court's articulation of the core right in *Heller*.

This Court is hardly alone in its understanding that the *core* Second Amendment right identified by the Supreme Court in *Heller* is limited to self-defense within the home. *See, e.g.*, *Bonidy v. United States Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015) (if Second Amendment right applies outside the home, it is subject to intermediate scrutiny because public carry "poses inherent risks to others"); *Jackson v. City of San Francisco*, 746 F.3d 953, 963-64 (9th Cir. 2014) (challenged law implicated conduct at the core of the Second Amendment because it applied to law-abiding citizens and placed restrictions on handguns "within the home"); *Kachalsky*, 701 F.3d at 93 (identifying the "core" Second Amendment right

as the "right of law-abiding, responsible citizens to use arms in defense of hearth and home" (quoting *Heller*, 554 U.S. at 634-35)); *National Rifle Ass'n of Am., Inc.*, 700 F.3d at 207 (prohibition against sale of firearms to individuals under 21 does not implicate core Second Amendment right because it does not "prevent 18-to-20-year-olds from possessing and using handguns 'in defense of hearth and home'" (quoting *Heller*, 554 U.S. at 628-30)); *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011) (explaining that the core Second Amendment right applies only within the home); *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (identifying the core Second Amendment right as that "of law-abiding responsible citizens to use arms in defense of hearth and home"); *Reese*, 627 F.3d at 800 (stating that the Supreme Court suggested that the core purpose of the Second Amendment right was "to allow 'law-abiding, responsible citizens to use arms in defense of hearth and home'" (quoting *Heller*, 554 U.S. at 634-35)).

Moreover, bearing directly on the question of the appropriate level of scrutiny to apply, it has long been understood that the "state's ability to regulate firearms . . . is qualitatively different in public than in the home" in light of the greater public safety risks associated with the use of firearms outside the home. *Kachalsky*, 701 F.3d at 94. "[A]s we move outside the home, firearms rights have always been more limited because public safety interests often outweigh individual interests in self-defense." *Masciandaro*, 638 F.3d at 470; *see also Bonidy*, 790 F.3d at 1126

(observing that public carry "poses inherent risks to others").  Indeed, "[t]here is a longstanding tradition of states regulating firearm possession and use in public because of the dangers posed to public safety." *Kachalsky*, 701 F.3d at 94-95 (citing Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 502-16 (2004)).  Application of strict scrutiny to laws regulating the use or possession of firearms in public would be entirely inconsistent with this longstanding tradition, as well as the compelling public safety justification supporting it, and would threaten to "handcuff[] lawmakers' ability to prevent armed mayhem in public places." *Masciandaro*, 638 F.3d at 471 (internal quotation marks omitted).

Applying essentially the same precepts adopted by this Court, three other circuits have already concluded that public carry laws similar to the District's are subject to, at most, intermediate scrutiny because they do not infringe on the Second Amendment's core right to self-defense in the home.  *See Drake v. Filko,* 724 F.3d 426, 435-36 (3d Cir. 2013) (favoring intermediate scrutiny because "[i]f the Second Amendment protects the right to carry a handgun outside the home for self-defense at all, that right is not part of the core of the Amendment" (internal quotation marks omitted)), *cert. denied* 134 S. Ct. 2134 (2014); *Woollard*, 712 F.3d at 876 (applying intermediate scrutiny to Maryland's good-and-substantial-reason requirement for public carry because it involves conduct outside the home); *Kachalsky*, 701 F.3d at

96 ("Because our tradition so clearly indicates a substantial role for state regulation of the carrying of firearms in public, we conclude that intermediate scrutiny is appropriate in this case.").

The Ninth Circuit, sitting *en banc*, also recently addressed a challenge to a similar California law requiring that applicants for a concealed carry license show "good cause" to carry a handgun in public. *Peruta v. County of San Diego*, 2016 WL 3194315 at *2. Although the court held that the law did not implicate any right protected by the Second Amendment at all, because "the Second Amendment does not preserve or protect a right of a member of the general public to carry concealed firearms in public,"[2] the majority agreed that if the law had implicated the Second Amendment, it would have been subject to intermediate scrutiny, and would have survived that level of review. *Id.*

The District of Columbia's "good reason" requirement for concealed handgun permits thus does not impose a "substantial burden" on the Second Amendment's "core right" to keep and bear arms "for the purpose of self-defense in the home." *Heller II*, 670 F.3d at 1257-58, 1255. The regulatory scheme in question applies exclusively outside of the home, which is outside the core of the Second

---

[2] California imposes various restrictions on open carry in certain places. *Peruta*, 2016 WL 3194315, at *3. Because the plaintiffs in *Peruta* sought only the issuance of concealed-carry permits, the Ninth Circuit did not address California's open-carry regulations. *Id.* at *5, 17.

Amendment's protection and where governments traditionally and necessarily have greater latitude to legislate in the interest of public safety. According to this Court's precedents, that precludes application of any level of scrutiny higher than intermediate and requires affirmance of the decision below.

### III. UNDER INTERMEDIATE SCRUTINY, THE DISTRICT'S JUDGMENTS REGARDING PUBLIC SAFETY ARE ENTITLED TO SUBSTANTIAL DEFERENCE.

Under this Court's precedents, to survive intermediate scrutiny, the government is required to show that the challenged regulations are "substantially related to an important governmental objective." *Heller II*, 670 F.3d at 1258 (internal quotation omitted). Drawing from cases applying intermediate scrutiny to content-neutral regulations under the First Amendment, this Court has instructed that the "fit" required between the challenged regulation and the governmental interest need not employ "the least restrictive means" available, but requires only "a means narrowly tailored to achieve the desired objective." *Id.* (quoting *Board of Trustees of the State of New York v. Fox*, 492 U.S. 469, 480 (1989)). This narrow tailoring requirement, in turn, "is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation, and the means chosen are not substantially broader than necessary to achieve that interest." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 782-83 (1989)).

Other courts have articulated the applicable standard somewhat differently,[3] but all of them require the government to demonstrate a fit that is reasonable, not perfect, between the challenged regulation and a government interest that is "important," "substantial," or "significant." *See, e.g.*, *Drake*, 724 F.3d at 436 (requiring a government objective that is "significant," "important," or "substantial" and a "fit" between the challenged regulation and the asserted objective that "need not be perfect," but is "reasonable" (footnote and internal quotations omitted)); *Woollard*, 712 F.3d at 878-79 ("fit" must be "reasonable, not perfect, and is shown by the State demonstrating that its interests are "substantially served by the challenged law" (internal quotations and citations omitted)); *Kachalsky*, 701 F.3d at 96-97 (upholding regulations if they are "substantially related to the achievement of an important government interest"); *see also Jackson*, 746 F.3d at 965 (summarizing common elements of various articulations of intermediate scrutiny as requiring the government's objective to be "significant, substantial, or important" and requiring

---

[3] The *Amici* States observe that this Court's formulation of the intermediate scrutiny standard differs from that adopted by other circuit courts. For example, other circuits do not use the term "narrowly tailored" to describe the intermediate scrutiny test applicable in the Second Amendment context. The Second Circuit has expressly rejected that term, *Kachalsky*, 701 F.3d at 97 (stating that "we are not required to ensure that the legislature's chosen means is 'narrowly tailored'"), and others simply do not use it, *see, e.g.*, *Marzzarella*, 614 F.3d at 97-98; *Woollard*, 712 F.3d 865; *National Rifle Ass'n*, 700 F.3d at 185; *Jackson*, 746 F.3d at 953; *Reese*, 627 F.3d at 804 n.4 (discussing "narrowly tailored" only in connection with the strict scrutiny analysis). However, in light of this Court's holding in *Heller II*, the *Amici* States recognize that this formulation is the governing standard in this case.

"a reasonable fit between the challenged regulation and the asserted objective");

*National Rifle Ass'n*, 700 F.3d at 207 (government must demonstrate that "there is a reasonable fit between the law and an important government objective"); *Williams*, 616 F.3d at 692 (requiring a firearms regulation to be "substantially related" to an "important" objective).

Along similar lines, the Supreme Court has held that the intermediate scrutiny standard in the First Amendment context, on which this Court relied in *Heller II*, does not require a regulation to "be the least speech-restrictive means of advancing the Government's interest." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994) ("*Turner I*"); *see also Turner II*, 520 U.S. at 217-18 (holding that a content-neutral regulation subject to intermediate scrutiny will not be invalidated just because "some alternative solution is marginally less intrusive on a speaker's First Amendment interests"). Instead, "the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Turner I*, 512 U.S. at 662 (quotation and citations omitted); *Turner II*, 520 U.S. at 217-18; *Ward*, 491 U.S. at 799. In other words, a regulation is constitutional "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 800.

In determining whether a law satisfies intermediate scrutiny, both this Court and the Supreme Court "accord substantial deference" to the legislature's judgments, and limit their review of the fit between challenged regulation and governmental interest to "assur[ing] that, in formulating its judgments, [the legislature] has drawn reasonable inferences based on substantial evidence." *Id.* at 1259 (quoting *Turner II*, 520 U.S. at 195); *see also Ward*, 491 U.S. at 800 (in First Amendment case, lower court "erred in failing to defer to the city's reasonable determination" regarding what would satisfy its substantial government interest). The Supreme Court in *Turner II*, for instance, held that "[j]udgments about how competing economic interests are to be reconciled . . . are for Congress to make," and it is not for courts to "displace [the legislature's] judgment . . . with our own, so long as its policy is grounded on reasonable factual findings supported by evidence that is substantial for a legislative determination." *Id.* at 224. Thus, in *Turner II*, the Court emphasized that the Court was required to defer to "a deliberate congressional choice to adopt the present levels of protection." *Id.* at 218 (emphasis added); *see also id.* at 213-14 (explaining that intermediate scrutiny "affords the Government latitude in designing a regulatory solution" and allows the Government to "employ the means of its choosing").

Similarly, "[i]n assessing th[e] 'fit'" between a challenged regulation and the government's interest in a Second Amendment case, this Court must also "afford 'substantial deference to the predictive judgments of [the legislature].'" *Schrader*,

704 F.3d at 990 (quoting *Turner I*, 512 U.S. at 665); *see also Dearth*, 791 F.3d at 45 (Henderson, J., dissenting) (same). Most other federal appellate courts agree that deference is owed to the legislature in the Second Amendment context both in determining whether important governmental interests are at stake, and in determining whether the means chosen are a "reasonable fit" with or "substantially related to" those interests.[4]

In this case, the court below properly applied these principles, and determined that the defendants had identified "substantial evidence of connections between public carrying of guns—and associated regulations on public carrying—and impacts on crime and public safety." 2016 WL 912174, *10. As the Fourth Circuit detailed in its decision in *Woollard*, laws such as that challenged here "advance[] the objectives of protecting public safety and preventing crime" in several ways. *Woollard*, 712 F.3d 879-80. They decrease the availability of handguns via theft, lessen the likelihood that basic confrontations will turn deadly, avoid the potentially-deadly confusion that can result from the introduction of a third person with a

---

[4] *See, e.g., Kachalsky*, 701 F.3d at 97 (in determining whether the challenged regulation "is substantially related to" the state's important governmental interests "'substantial deference to the predictive judgments of [the legislature]' is warranted" (quoting Turner II, 520 U.S. at 195)); *Drake*, 724 F.3d at 436-37 ("When reviewing the constitutionality of statutes, courts accord substantial deference to the [legislature's] predictive judgments." (internal quotation omitted)); *Woollard*, 712 F.3d at 881 (in assessing "reasonable fit," deferring to the "considered view of the General Assembly" that the regulation struck the appropriate balance with the government interests).

handgun into a confrontation between criminals and police, and curtail the presence of handguns during routine police-citizen encounters. *Id.* Assuming that the Second Amendment applies to the challenged law, the District of Columbia's "good reason" requirement satisfies intermediate scrutiny.

## IV. PRIOR RESTRAINT DOCTRINE DOES NOT APPLY OUTSIDE OF THE FIRST AMENDMENT CONTEXT.

The district court properly rejected the plaintiffs' attempt to apply First Amendment prior restraint doctrine in this case. *Wrenn*, 2016 WL 912174, at *8-9. Although this Court and a number of others have looked to First Amendment jurisprudence as a guide in identifying and articulating the standard of scrutiny to be applied to Second Amendment challenges, there is no logical justification for "import[ing] the First Amendment's idiosyncratic doctrines wholesale into a Second Amendment context, where, without a link to expressive conduct, they will often appear unjustified." *Chester*, 628 F.3d at 687 (Davis, J., concurring); *see also Kachalsky*, 701 F.3d at 91 ("We are hesitant to import substantive First Amendment principles wholesale into Second Amendment jurisprudence.").

The doctrine of prior restraint, in particular, is "specific to the First Amendment and stems from the substantive First Amendment restrictions." *Hightower v. City of Boston*, 693 F.3d 61, 81 (1st Cir. 2012). To be a prior restraint, the challenged law "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of . . .

20

censorship." *Id.* The doctrine is tailored to the unique demands of the First Amendment, and has its roots in the centuries-old "struggle in England, directed against the legislative power of the licenser, result[ing] in renunciation of the censorship of the press." *Near v. Minnesota*, 283 U.S. 697, 713 (1931).

No similar historical justification exists for applying the doctrine in the context of the Second Amendment. Unlike in the First Amendment context, where the government can "adequately serve[]" its interests by imposing "penalties . . . after freedom to speak has been so grossly abused that its immunity is breached," *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180-81 (1968), a government has no adequate remedy to redress the misuse of firearms after the fact. Rather, such misuse may well result in an "unspeakably tragic act of mayhem," particularly "as one move[s] the right from the home to the public square." *Masciandaro*, 638 F.3d at 475-76. For these reasons, every court to consider the issue has refused to import the prior restraint doctrine into the Second Amendment. *See, e.g.*, *Drake*, 724 F.3d at 435; *Woollard*, 712 F.3d at 883 n.11; *Kachalsky*, 701 F.3d at 91-92.

What is more, as the Second Circuit has ably articulated, "this case would be a poor vehicle" for a prior restraint claim in any event. *Kachalsky*, 701 F.3d at 92. "To make out a prior-restraint argument, [p]laintiffs would have to show that the [good] cause requirement lacks 'narrow, objective, and definite standards,' thereby

granting officials unbridled discretion in making licensing determinations." *Id.* (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992)). Here, the "[p]laintiffs' complaint is not that the [good] cause requirement is standardless; rather, they simply do not like the standard—that licenses are limited to those with a special need for self-protection." *Id.* The District's good reason requirement is a reasonable regulation of firearms well within the District's power to enact under the Second Amendment.

# CONCLUSION

The judgment of the United States District Court for the District of Columbia should be reversed.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Joshua N. Auerbach
MATTHEW J. FADER
 *Of counsel* (not admitted in DC)
PATRICK B. HUGHES
 *Of counsel* (not admitted in DC)
JOSHUA N. AUERBACH
Assistant Attorneys General
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Phone: (410) 576-7906
Fax: (410) 576-6955
mfader@oag.state.md.us

July 20, 2016

Attorneys for *Amicus Curiae*
State of Maryland

Additional counsel listed on next page

Additional Counsel

KAMALA D. HARRIS
*Attorney General of California*
1300 I Street
Sacramento, California 95814

GEORGE JEPSEN
*Attorney General of Connecticut*
55 Elm Street
Hartford, Connecticut 06106

DOUGLAS S. CHIN
*Attorney General of Hawaii*
425 Queen Street
Honolulu, Hawai'i 96813

LISA MADIGAN
*Attorney General of Illinois*
100 West Randolph, 12th Floor
Chicago, Illinois 60601

TOM MILLER
*Attorney General of Iowa*
1305 East Walnut Street
Des Moines, Iowa 50319

MAURA HEALEY
*Attorney General of Massachusetts*
One Ashburton Place
Boston, Massachusetts 02108

ERIC T. SCHNEIDERMAN
*Attorney General of New York*
120 Broadway
New York, New York 10271

ELLEN F. ROSENBLUM
*Attorney General of Oregon*
1162 COURT ST. N.E.
SALEM, OREGON 97301

ROBERT W. FERGUSON
*Attorney General of Washington*
1125 Washington Street SE
PO Box 40100
Olympia, Washington 98504-0100

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

This *Amicus Curiae* brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,294 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This *Amicus Curiae* brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Joshua N. Auerbach
JOSHUA N. AUERBACH
Attorney for *Amicus Curiae*
State of Maryland

Dated: July 20, 2016


## CERTIFICATE OF SERVICE

I certify that on July 20, 2016, electronic copies of this brief were served on all parties registered through the CM/ECF system.

/s/ Joshua N. Auerbach
JOSHUA N. AUERBACH
Attorney for *Amicus Curiae*
State of Maryland

Dated: July 20, 2016